**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LENDING CAPITAL ADVISORS LLC<br>d/b/a Catalyst Energy Group,<br><br>WIDEVIEW CAPITAL LLC<br>d/b/a Catalyst Renewable Energy,<br><br>MICHAEL HOLLAND,<br><br>and<br><br>THE JAMES H. HOLLAND REVOCABLE TRUST,<br><br>Petitioners,<br><br>v.<br><br>ZETECH, INC.,<br><br>Respondent. | Civil Action No. |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION**
**TO ENFORCE ARBITRATION DISCOVERY ORDERS**

Petitioners Lending Capital Advisors LLC d/b/a Catalyst Energy Group ("CEG"), Wideview Capital LLC d/b/a Catalyst Renewable Energy ("CRE"), and Michael Holland ("Holland") and the James H. Holland Revocable Trust (the "Trust" and, with Holland, the "Holland Shareholders"), by and through their counsel, The Glennon Law Firm, P.C., respectfully allege as follows:

## PRELIMINARY STATEMENT

1. Petitioners seek an Order of this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 7, compelling Respondent Zetech, Inc. ("Zetech"), to comply with discovery orders issued by Sole Arbitrator Sven Volkmer, Esq., an arbitrator sitting in this District, on March 12,

2026 (“Procedural Order No. 5”) (Sulkowski Decl., Ex. A), and April 3, 2026 (“Procedural Order No. 6”) (Sulkowski Decl., Ex. B).

## PARTIES, JURISDICTION, AND VENUE

2. At all relevant times, Petitioner CEG was and is a Virginia limited liability company whose members are citizens of Vermont, Texas, and Colorado.

3. At all relevant times, Petitioner CRE was and is an Alaska limited liability company whose members are citizens of Vermont and Texas.

4. At all relevant times, Petitioner Holland was and is a citizen of Vermont.

5. At all relevant times, Petitioner the Trust was and is a Texas Trust whose trustee is a citizen of Texas.

6. At all relevant times, upon information and belief, Respondent Zetech was and is a New York corporation with its headquarters in Leesburg, Florida.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8. Venue is proper in this judicial district pursuant to 9 U.S.C. § 7 because the arbitration hearing is to take place before an arbitrator sitting in this district. Additionally, at all relevant times, Respondent Zetech was a New York corporation.

## FACTUAL AND PROCEDURAL HISTORY

### The Support Agreement

9. Zetech is an energy-technology company. Prior to April 2020, CEG had worked for approximately two years as a distributor of Zetech’s renewable-energy products.

10. In early 2020, Zetech represented to CEG that it (Zetech) was developing an energy-generation and -storage device called the "Magnaflux," which would capture and use solar power to charge energy-storage devices called "Super Caps," which in turn could be used to power consumer devices and systems.

11. On or about April 13, 2020, pursuant to those representations by Zetech, CEG and Zetech ended their distributorship agreement and entered into a Marketing, Sales, Distribution and Support Agreement (the "Support Agreement") (Sulkowski Decl., Ex. C), in which, among other things, Zetech promised to pay CEG:

a. 15 percent of all Zetech revenue generated by sales to customers identified by CEG; and

b. 5 percent of all other revenue received by Zetech from any source, except funds received as investments or rebates.

(Sulkowski Decl., Ex. C, § 1.04.)

12. The Support Agreement contains the following mandatory arbitration clause:

> In the event that the parties are unable to informally resolve any controversy, claim or dispute relating to this Agreement, such shall be resolved by binding arbitration before a single arbitrator in accordance with the American Arbitration Association [rules] then in effect pursuant to an arbitration conducted in New York, New York. The award of the arbitrator shall be in writing, shall be final and binding upon the parties, shall not be appealed from or contested in any court and may, in appropriate circumstances, include injunctive relief. Judgment upon such award may be entered in any court having jurisdiction thereof. If any litigation or arbitration shall ensue among the parties in connection with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party or parties its reasonable attorneys' fees and other costs and expenses in connection therewith.

(*Id.* § 5.09.)

13. In return for Zetech's promises in the Support Agreement, CEG promised to (a) act as Zetech's non-exclusive independent agent by identifying, screening, and liaising with prospective customers; and (b) "provide Zetech with general sales and marketing support, including developing sales and marketing materials for use by Zetech, [and] providing other aspects of a marketing platform as may be appropriate or reasonably requested to support the marketing and sales efforts of Zetech, such as assisting in advertising, sales promotion, and public relations campaigns, [and] attending trade shows and conferences." (*Id.* § 1.01(a)-(b).)

**The Manufacturing Agreement**

14. Also on or about April 13, 2020, Zetech and CRE entered into a Non-Exclusive Manufacturing Assembly, Sales, and Distribution Agreement (the "Manufacturing Agreement") (Sulkowski Decl., Ex. D), in which Zetech granted CRE, among other things:

a. A non-exclusive worldwide[1] license to manufacture and sell the Magnaflux and Super Caps (together, the "Licensed Products");

b. The right to purchase from Zetech, at cost, all principal components required to manufacture the Licensed Products (the "Principal Component Parts");

c. The right to own the first fully functioning and commercially viable Magnaflux device (the "Magnaflux Prototype"); and

d. The right to establish the first Magnaflux manufacturing facility in the United States, provided CRE timely secured funding for that facility, and to operate that facility as the exclusive U.S. Magnaflux manufacturing facility for a period of time.

[1] The license excludes only certain territories in Southeast Asia. (*See* Sulkowski Decl., Ex. D, § 1.01(c).)

(Sulkowski Decl., Ex. D, Art. I-II.)

15. The Manufacturing Agreement obligates Zetech to, among other things:

a. Produce and deliver to CRE the Magnaflux Prototype "as soon as practicable after execution of this Agreement"; and

b. Provide CRE with "all completed design drawings, process engineering reports and other engineering or process documentation necessary" to manufacture the Magnaflux and other Licensed Products.

(*Id.* §§ 2.01, 2.04(b).)

In return, the Manufacturing Agreement requires CRE to, among other things:

a. Secure sufficient funding to construct the first U.S. Magnaflux manufacturing facility within one year after CRE's receipt of the Magnaflux Prototype;

b. Establish the first U.S. Magnaflux manufacturing facility "as soon as practicable after it has received" the necessary funding; and

c. Order the principal parts of all Licensed Products from Zetech.

(*Id.* §§ 1.02(a), 2.02(a), 2.04(a).)

16. The Manufacturing Agreement contains a mandatory arbitration clause identical to that of the Support Agreement. (*See id.* § 7.10.)

**<u>The Shareholders' Agreement</u>**

17. Also on or about April 13, 2020, Holland and the Trust entered into a Shareholders' Agreement with Zetech (the "Shareholders' Agreement") (Sulkowski Decl., Ex. E), and invested a total of $500,000 in Zetech and became Zetech shareholders pursuant to two Securities Purchase Agreements (collectively, the "SPAs") (Sulkowski Decl., Ex. F).

**Petitioners Perform Under the Parties' Agreements, but Zetech Does Not**

18. CEG performed as promised under the Support Agreement. For example, on or about November 6, 2021, CEG's principal, Holland, informed Zetech's principal, Mike Dana ("Dana"), by email that CEG was "ready to stand up any size assembly plant (large or small), when you are ready" and that CEG had already hired a graphic artist, written the script for a marketing video, and commissioned, paid for, and received a voice-over for that video. (Sulkowski Decl., Exhibit G.) And, on or about December 2, 2021, Holland emailed Dana again, stating: "When it comes to the Department of Defense keep in mind that CEG is set up to sell to the government. It took months to set it up." (Sulkowski Decl., Exhibit H.) CEG also created 166 pages of brochures for Zetech's products and 171 pages of quotes for approximately $8.7 billion of Zetech's products. (*See* Sulkowski Decl., Exhibit I.)

19. Likewise, CRE performed as promised under the Manufacturing Agreement. For instance, Holland emailed Dana on or about January 7, 2022, and again on or about January 24, 2022, stating both times that he (Holland) had made contact with the Chief Financial Officer of a major international bank and with an individual in charge of investments for a large insurance company, both of whom had expressed interest in funding CRE's activities under the Manufacturing Agreement. (*See* Sulkowski Decl., Exhibit J.)

20. The Holland Shareholders, too, performed under the Shareholders' Agreement and the SPAs, providing the pledged investment funds and fulfilling all of their respective representations and warranties.

21. However, despite Zetech's promises in the Support Agreement to pay CEG 15 percent of its revenue from customers identified by CEG and 5 percent of its other non-investment and non-rebate revenue, Zetech never paid any commission to CEG.

22. Similarly, notwithstanding its promise in the Manufacturing Agreement to deliver the Magnaflux Prototype to CRE "as soon as practicable after execution of [the Manufacturing] Agreement," Zetech never delivered the Magnaflux Prototype to CRE.

23. Nor did Zetech fulfill its obligations to the Holland Shareholders under the Shareholders' Agreement; rather, upon information and belief, Dana breached his fiduciary duties of loyalty and good faith to the Holland Shareholders by diverting to himself corporate opportunities belonging to Zetech; refusing to disclose Zetech's financial statements, balance sheets, and profit-and-loss statements to the Holland Shareholders as required by the company's bylaws, despite repeated requests; and failing to deliver accurate IRS Schedules K-1 to the Holland Shareholders for tax years 2020 through 2025.

**The Arbitration**

24. On or about May 30, 2025, CEG filed a Demand for Arbitration. (Sulkowski Decl., Ex. K.) Zetech did not submit an answering statement.

25. The American Arbitration Association ("AAA") appointed Sven Volkmer, Esq., as the Sole Arbitrator and notified CEG and Zetech by letter of a preliminary hearing to be held on August 8, 2025. CEG attended the preliminary hearing; Zetech did not.

26. On or about September 8. 2025, CEG filed its Statement of Claim. (Sulkowski Decl., Ex. L.) Zetech never responded to CEG's Statement of Claim.

27. On or about October 29, 2025, the Sole Arbitrator held a case-management conference, which CEG attended but Zetech did not.

28. On or about November 6, 2025, the Holland Shareholders filed their Demand for Arbitration, Statement of Claim, and Request for Consolidation. (Sulkowski Decl., Ex. M.) Zetech never responded.

29. On or about November 8, 2025, CRE submitted its Demand for Arbitration, Statement of Claim, and Request for Consolidation. (Sulkowski Decl., Ex. N.) Zetech never responded.

30. On or about December 10, 2025, the Sole Arbitrator issued his Procedural Order No. 3, consolidating the claims of CEG, CRE, and the Holland Shareholders into a single arbitration proceeding and setting forth procedures for the remainder of that arbitration, including the parties' exchange of documents. (*See* Sulkowski Decl., Ex. O, ¶ 23 ("With respect to each request for documents, the parties shall either (i) provide the opposing party with the documents in their possession, custody or control that are responsive to the request, or (ii) set forth their objections to the request in the Document Production Table provided by the opposing party.").)

31. On or about February 6, 2026, in compliance with Procedural Order No. 3, Petitioners served Zetech with document requests formatted as a Document Production Table. (Sulkowski Decl., Ex. P.) Zetech never responded.

32. On or about March 10, 2026, Petitioners submitted their unanswered document requests, with explanations of their relevance, to the Sole Arbitrator. (Sulkowski Decl., Ex. Q.)

33. On or about March 12, 2026, the Sole Arbitrator issued his Procedural Order No. 5, ordering Zetech to produce documents responsive to various of CEG's and CRE's document requests, as limited by Procedural Order No. 5. (*See* Ex. A.) Zetech did not respond, nor did it produce any documents.

34. On or about March 27, 2026, Petitioners asked the Sole Arbitrator to reconsider, in part, Procedural Order No. 5 and order Zetech to comply with certain document requests that the Sole Arbitrator had initially declined to enforce.

35. On or about April 1, 2026, the Sole Arbitrator sent an email to the parties, in which he invited Zetech "to submit any comments on Claimants' Request for Partial Reconsideration of Procedural Order No. 5 by COB [close of business] on Friday, April 3, 2026." (Sulkowski Decl., Ex. R.) Zetech never responded.

36. On or about April 3, 2026, after due consideration, the Sole Arbitrator issued his Procedural Order No. 6, partially granting Petitioners' request for reconsideration and ordering Zetech to "produce all documents responsive to those of Claimants' document production requests that the Sole Arbitrator has granted . . . by **Friday, April 10, 2026**." (Sulkowski Decl., Ex. B, ¶ 10.)

37. The Sole Arbitrator's Procedural Orders Nos. 5 and 6 required Zetech to produce the following, all of which are critical to a determination of Petitioners' damages:

a. Documents sufficient to show Zetech's revenues from April 13, 2010, to the present (Ex. A ¶¶ 6(a)-(b) & (d));

b. Zetech's annual financial statements for the last five years (*id.* ¶ 6(c));

c. Documents sufficient to show Zetech's revenues from various transactions during the relevant period (*id.* ¶ 6(e));

d. Zetech's federal and state tax returns for the last five years (Ex. B ¶ 8(a)); and

e. Documents relating to distributions or payments made by Zetech to Dana from April 13, 2020, to the present (*id.* ¶ 8(b)).

38. Zetech never responded, nor did it produce any documents.

39. On or about July 6, 2026, Petitioners submitted to the Sole Arbitrator a Request for Partial Summary Judgment on Liability. (Sulkowski Decl., Ex. S.)

40. On or about July 8, 2026, the Sole Arbitrator sent an email to the parties, inviting them "to submit by COB [close of business] on Tuesday, July 14, any comments and proposals on the procedural steps following Claimants' motion for partial summary judgment, including a date for Respondent's response to Claimants' motion." (Sulkowski Decl., Ex. T.)

41. On or about July 14, 2026, Petitioners submitted to the Sole Arbitrator a proposed schedule for the remaining steps of the arbitration. (Sulkowski Decl., Ex. U.) Zetech made no submission.

42. On or about September 2, 2026, the Sole Arbitrator issued his Procedural Order No. 8, ordering Petitioners to submit certain additional evidence, and respond to questions on certain issues, relevant to their Request for Partial Summary Judgment. (Sulkowski Decl., Ex. V.)

43. Petitioners made the required supplemental submission on or about September 16, 2026. (Sulkowski Decl., Ex. W.) Zetech never responded.

44. On or about October 2, 2026, the Sole Arbitrator issued his Partial Award on Liability, finding Zetech liable to CEG for breach of the Support Agreement and to CRE for breach of the Manufacturing Agreement. (Sulkowski Decl., Ex. X.) The Sole Arbitrator reserved the issue of damages on both claims, to be resolved following further proceedings. (*Id.* ¶ 46(c)-(d).)

45. Petitioners cannot prove their damages without the discovery ordered by the Sole Arbitrator. Accordingly, Petitioners now seek an Order of this Court compelling Zetech to comply with the Sole Arbitrator's Procedural Orders Nos. 5 and 6.

**RESPONDENT MUST BE COMPELLED TO COMPLY WITH**
**THE SOLE ARBITRATOR'S DISCOVERY ORDERS**

46. The Sole Arbitrator in this matter has, at all relevant times, possessed the authority to order the parties to produce documents in pre-hearing discovery. (*See* Sulkowski Decl., Ex. C, § 5.09 (binding parties to arbitrate under AAA rules); Sulkowski Decl., Ex. D, § 7.10 (same); AAA Commercial Rule 23(a) ("The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses."); *id.* Rule 23(b)(3) ("The arbitrator may, on application of a party or on the arbitrator's own initiative . . . require the parties, in response to reasonable document requests, to make available to the other party documents in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, and reasonably believed by the parties seeking the documents to exist and to be relevant and material to the outcome of disputed issues.").) *See also Life Receivables Trust v. Syndicate 102*, 549 F.3d 210, 217 (2d Cir. 2008) ("[A]n arbitrator's power over parties stems from the arbitration agreement . . . . Where agreements so provide, that authority includes the power to order discovery from the parties in arbitration . . . ."); *Arbitration Between Brazell v. Am. Color Graphics*, No. M-82 AGS, 2000 WL 364997, at *2 (S.D.N.Y. Apr. 7, 2000) ("[S]ection 7 [of the Federal Arbitration Act] has been interpreted by courts in this district to include pre-hearing discovery among parties."); *Application of Technostroyexport*, 853 F. Supp. 695, 697-98 (S.D.N.Y. 1994) ("Whether or not there is to be pre-hearing discovery is a matter governed by the applicable arbitration rules (as distinct from court rules) and by what the arbitrators decide."); *Chiarella v. Viscount Indus. Co.*, No. 92 Civ. 9310 (RPP), 1993 WL 497967, at *4 (S.D.N.Y. Dec. 1, 1993) (same).

47. Zetech had ample opportunity to oppose Petitioners' document requests, both before and after the issuance of Procedural Orders Nos. 5 and 6, but chose not to do so.

48. Despite Zetech's failure to object to those requests, the Sole Arbitrator did not order Zetech to comply with them wholesale. Rather, the Sole Arbitrator carefully evaluated each request; ordered Zetech to comply with only those that the Sole Arbitrator found to be "material to the outcome of the dispute"; and narrowed many of those requests *sua sponte*. (Sulkowski Decl., Ex. A, ¶ 5.)

49. As noted above, the documents the Sole Arbitrator ordered Zetech to produce are critical to Petitioners' ability to prove their damages resulting from Zetech's breaches of the Support Agreement, the Manufacturing Agreement, and the Shareholders' Agreement.

50. In particular, CEG is entitled under the Support Agreement to 15 percent of Zetech's revenues from products sold as a result of CEG's customer-identification efforts and 5 percent of all other Zetech revenue, excluding funds received as investments or rebates. (Sulkowski Decl., Ex. C, § 1.04.) CEG cannot, however, determine—much less prove—the amounts of those Zetech revenues, and thus the amounts of CEG's entitlements to commissions under the Support Agreement, without the discovery ordered by the Sole Arbitrator.

51. Similarly, CRE cannot determine—much less prove—the damages it has sustained as a result of Zetech's failure to fulfill its obligations under the Manufacturing Agreement, without the discovery ordered by the Sole Arbitrator, including but not limited to materials evidencing Zetech's transactions with other manufacturers and revenues from those transactions.

52. Moreover, the Holland Shareholders cannot determine—much less prove—the damages they have suffered without the discovery ordered by the Sole Arbitrator, which will

show, among other things, the dates and amounts of any preferential transfers by Zetech to Dana at the expense of the Holland Shareholders.

53. This Court has the power, under 9 U.S.C. § 7, to enforce the Sole Arbitrator's discovery orders. *See, e.g.*, *Turner ex rel. Int'l Bhd. of Elec. Workers v. CBS Broad. Inc.*, 599 F. Supp. 3d 187, 196 (S.D.N.Y. 2022) ("Section 7 provides that a district court 'may compel' the attendance of witnesses and production of documents before an arbitrator.") (granting petition to enforce pre-hearing arbitral subpoena); *Application of Technostroyexport*, 853 F. Supp. at 698 ("[T]here is authority that a court can enforce a discovery ruling of an arbitrator."); *Brazell*, 2000 WL 364997, at *1-2 ("Section 7 . . . provides statutory authority for invoking the powers of the federal district court to assist the arbitrators in obtaining evidence.") (granting petition to compel compliance with pre-hearing arbitral subpoena).

**WHEREFORE**, Petitioners respectfully request that this Court issue an Order:

a. Compelling Zetech to immediately produce the discovery required by Procedural Order No. 5;

b. Compelling Zetech to immediately produce the discovery required by Procedural Order No. 6;

c. Ordering Zetech to pay Petitioners' attorneys' fees and costs incurred in bringing this action; and

d. Granting such other and further relief as this Court may deem just and equitable.

[*Remainder of page intentionally left blank*]

Dated: October 23, 2026
New York, New York

**THE GLENNON LAW FIRM, P.C.**


Sarah A. Sulkowski, Esq.
100 Park Avenue, 16th Floor
New York, New York 10017
(585) 210-2150
SSulkowski@GlennonLawFirm.com
*Attorneys for Petitioners*

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

I hereby certify that this document complies with the word-count limitation set forth in this Court's Local Civil Rule 7.1(c), because it contains 3,273 words, excluding the portions of the document exempted by said Rule. In making this certification, I have relied upon the word-count function of the word-processing software used to prepare this document.

Dated: October 23, 2026
New York, New York

**THE GLENNON LAW FIRM, P.C.**

Sarah A. Sulkowski, Esq.
100 Park Avenue, 16th Floor
New York, New York 10017
(585) 210-2150
SSulkowski@GlennonLawFirm.com
*Attorneys for Petitioners*